## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

SIDNEY LAMAR HOLMES,

        Plaintiff,

v.

BROWARD COUNTY SHERIFF'S
OFFICE, KENNETH SMITH, ROBERT
CAMPBELL, and the ESTATE OF
ROBERT FRESHWATERS,

        Defendants.

**JURY TRIAL DEMANDED**

## COMPLAINT

NOW COMES Plaintiff, SIDNEY LAMAR HOLMES, by his attorneys LOEVY & LOEVY, and complaining of Defendants BROWARD COUNTY SHERIFF'S OFFICE, KENNETH SMITH, ROBERT CAMPBELL, and the Estate of ROBERT FRESHWATERS, alleges as follows:

### INTRODUCTION

1.      Sidney Lamar Holmes was wrongly convicted of the 1988 armed robberies of Vincent Wright and Anissia Johnson. Holmes spent nearly thirty-four years in prison.

2.      Holmes had nothing to do with the crimes and has always maintained his innocence.

3.      Holmes had an alibi, multiple alibi witnesses, and other evidence establishing his innocence.

4.      Instead of properly investigating Vincent Wright and Anissia Johnson's allegations, Defendants targeted Holmes, who had two prior criminal convictions.

1

5.      Defendants fixated on Holmes and pursued him as a suspect using improper investigation tactics.

6.      Defendants used improper eyewitness identification techniques to fabricate a false eyewitness identification of Holmes by Vincent Wright, one of the victims.

7.      The other victim, Anissia Johnson, was never able to make an eyewitness identification of Holmes.

8.      Wright's identifications of Holmes were based on the Defendants' unfounded fixation on Holmes and improper photographic and live lineup techniques.

9.      Holmes was charged, prosecuted, and wrongly convicted of armed robbery. He was sentenced to 400 years in prison.

10.     On March 13, 2023, thirty-four years after his wrongful conviction, the State of Florida vacated Holmes's conviction and sentence.

11.     Holmes now seeks redress for the injuries he suffered and will continue to experience as a result of Defendants' misconduct.

## JURISDICTION AND VENUE

12.     This action is brought under 42 U.S.C. § 1983 and Florida law to redress Defendants' tortious conduct and their deprivation of Plaintiff's rights secured by the U.S. Constitution.

13.     This Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of his state-law claims pursuant to 28 U.S.C. § 1367.

14.     Venue is proper under 28 U.S.C. § 1391(b). The events and omissions giving rise to Holmes's claims happened within this judicial district, including the investigation, prosecution, trial, and wrongful conviction.

## PARTIES

15.     Plaintiff Sidney Lamar Holmes is a resident of Florida. He spent nearly thirty-four years in prison for a crime he did not commit.

16.     Defendants Kenneth Smith, Robert Campbell, and Robert Freshwaters are current or former officers of the Broward County Sheriff's Office. These Defendants were responsible for investigating crimes, including the crime in this case. The Defendants committed, facilitated, and approved the constitutional violations and state law violations at issue in this case.

17.     Defendant Robert Freshwaters is deceased. The claims are brought against his estate.

18.     Defendant Broward County Sheriff's Office oversees crime investigation in Broward County, Florida. The individual defendants referenced above were employed by the Broward County Sheriff's Office while conducting the investigation described in this Complaint. The Broward County Sheriff's Office is responsible for its policies and practices, which were implemented by Defendants in this case. Defendant Broward County Sheriff's Office is responsible under Florida state law for judgments entered against Defendants.

19.     Each of the Defendants named in this Complaint acted during their investigation of the crimes as agents or employees of the Broward County Sheriff's Office.

20.     At all times relevant to the events described in this Complaint, each of the individual Defendants acted under color of law, within the scope of his or her employment, and as an investigator. Each of the individual Defendants is sued in his or her individual capacity, unless otherwise noted.

## FACTS

### The Armed Robbery of Vincent Wright and Anissia Johnson

21.     On June 19, 1988, Vincent Wright and Anissia Johnson were stopped by two armed men at OneStop convenience store, in Fort Lauderdale, FL.

22.     Johnson has estimated the robbery may have occurred around 6:30pm.

23.     Vincent has said that two men approached him as he filled air into his rear tire and threatened to shoot him if he did not give him money.

24.     When Vincent said he did not have money, one of the men moved towards Johnson, who was seated in the passenger seat. He pointed a gun at her and asked her for money.

25.     Then, according to Vincent, a third man pulled up behind his car, told the other two men to take Vincent's car, and said he would meet them later. Johnson never recalled seeing a third man, nor has she recalled seeing a car.

26.     Johnson got out of Vincent's car. According to Vincent, the first two men left in Vincent's car, and the third man drove away in the brown car.

27.     The incident took between five and fifteen minutes.

28.     Meanwhile, Holmes was at his parents' house celebrating Father's Day.

### The Attempted Robbery of Milton Wright

29.     Earlier that same day, four men had attempted to rob Vincent Wright's brother, Milton Wright, at a stoplight five minutes away from the OneStop convenience store.

### The Police Investigation

30.     On the day of the One Stop robbery, Defendant Smith responded to the scene. Johnson had called the police and was the only witness who stayed at the scene.

31.     Johnson did not mention a third perpetrator or a car.

32.     Johnson reported two perpetrators, who she described as Black men in their twenties. She said that she only paid attention to one of the men—the one who came to the passenger side—who she described as "red" and "light-skinned."

33.     Johnson did not mention a third perpetrator or a car.

34.     Defendants Campbell and Freshwaters were the lead detectives assigned to investigate the robbery.

35.     Throughout the investigation, the investigators showed Johnson hundreds of photographs, but she was never able to make an identification.

36.     On June 28, 1988, Defendant Campbell showed Vincent a book of 250 photographs, none of which were of Holmes. Vincent failed to make an identification.

37.     On July 1, Detective Campbell created a six-photo lineup that included a photo of Holmes and showed it to Vincent.

38.     Vincent did not identify anyone from the lineup.

39.     Detective Campbell then went to Holmes's home and took a new photo of him. Detective Campbell used this photo of Holmes to create a second photo lineup.

40.     Holmes was the only person in the second lineup that was also in the first lineup.

41.     Holmes was arrested on October 6, 1988.

42.     On October 6, 1988, Vincent viewed a live lineup and allegedly identified Holmes.

43.     The live line-up was also improper and suggestive. For example, Holmes was positioned differently.

**Holmes's Criminal Trial**

44.     On April 24, 1989, at Holmes's trial, Vincent made an in-court identification of Holmes as the driver of the brown car.

5

45.     Vincent has said, under penalty of perjury, that when he identified Holmes, he believed that Holmes could have been the driver *or* one of the two perpetrators who drove off in his car on June 19, 1988.

46.     Milton Wright did not testify at Holmes's trial.

47.     Johnson testified that she did not see the driver get out of the car.

48.     Vincent's description of the driver purportedly changed between June 19, 1988, and Holmes's April 1989 trial.

49.     Holmes presented four alibi witnesses: his mother, two uncles, and father's friend.

50.     The alibi witnesses testified that Holmes was at his parents' house after church on June 19, 1988, to celebrate Father's Day.

**Holmes Received a 400-Year Sentence**

51.     Holmes was convicted of the armed robbery of Vincent Wright and Anissia Johnson on April 26, 1989.

52.     The prosecutor recommended a sentence of 825 years.

53.     The prosecutor's recommendation was based on Holmes's failure to provide the identities of the two perpetrators first on scene at the OneStop armed robberies.

54.     Holmes was not involved in the crime and did not know the identities of anyone involved.

55.     Holmes received a 400-year sentence.

56.     Holmes maintained his innocence throughout his trial, conviction, sentencing, and incarceration.

## Florida Conviction Review Unit Investigation

57.     In November 2020, Holmes applied to Florida's Conviction Review Unit (CRU), claiming his factual innocence of the June 19, 1988 armed robbery for which he was convicted on April 26, 1989.

58.     The CRU determined that Holmes asserted a plausible claim of innocence.

59.     In 2021 and 2022, the CRU worked with the Innocence Project of Florida (IPF) to investigate the circumstances surrounding Holmes's conviction.

60.     IPF Investigator Amy Carr interviewed Vincent Wright and Anissia Johnson.

61.     Carr also interviewed five witnesses who remembered seeing Holmes at his parents' house on June 19, 1988, celebrating Father's Day.

62.     The IPF and CRU each consulted with eyewitness identification experts who analyzed the reliability of the Defendants' investigation.

63.     The experts provided the CRU with reports of their expert opinions.

64.     The experts flagged several issues adversely affecting identification accuracy, including insufficient basis to place Holmes in the lineups, the length of time between the robbery and lineups, inserting Holmes in multiple lineups, the different appearances of Holmes and lineup fillers, Defendant Campbell's participation in the lineup given his knowledge that Holmes was a suspect, and potentially biased instructions.

65.     The CRU then provided members of the State's Independent Review Panel (IRP) with information from the original investigation and their review.

66.     On February 16, 2023, the IRP unanimously determined there was a reasonable doubt as to Holmes's culpability for the June 19, 1988, robbery.

67.     The IRP recommended that Holmes's conviction and sentence be vacated, and the State Attorney's Office should enter a *nolle prosequi*.

68.     The State Attorney's Office, having reviewed the findings of the CRU, IPF, and IRP, agreed that Holmes's conviction and sentence be vacated, and the State Attorney's Office should enter a *nolle prosequi*.

69.     Holmes's conviction and sentence was vacated, and charges were dismissed, on March 13, 2023.

### The Fort Lauderdale Police Department's Policies, Practices, and Customs

70.     The actions of Defendants Campbell, Freshwaters, and Smith as described herein were consistent with the policies, practices, and customs of the Broward County Sheriff's Office.

71.     The actions of Defendants Campbell, Freshwaters, and Smith described herein were undertaken pursuant to the policies and practices of the Broward County Sheriff's Office in that Broward County deputies and detectives regularly used unconstitutional measures during the relevant time periods to falsely implicate criminal suspects, including engaging in unduly suggestive identification and lineup procedures. These were widespread, clear, and persistent patterns and practices of the Broward County Sheriff's Office in the years around and leading up to Plaintiff's 1989 conviction.

72.     At all times relevant herein, the Broward County Sheriff's Office had no (or inadequate) policies, procedures, rules, or regulations regarding lineups and investigations even though the need was obvious, and the likelihood of recurring violations was clear.

73.     The failure to maintain adequate policies on these matters posed an obvious risk of violating the constitutional rights of Holmes and other criminal suspects. This failure to maintain

adequate policies therefore constituted deliberate indifference on the part of the Broward County Sheriff's Office.

74.     At all times relevant herein and for a period of time prior, the Broward County Sheriff's Office had notice of a widespread practice where innocent people like Holmes were subjected to criminal proceedings based on false evidence and/or were deprived of their liberty without probable cause, and routinely implicated in crimes they had no connection to.

75.     Upon information and belief, the final policymakers for the Broward County Sheriff's Office were on notice before 1988–89 that their policies were inadequate and outdated, likely to lead to constitutional violations by their officers, and needed to be revised to ensure that officers complied with the law.

76.     The widespread policies were so well-settled as to constitute de facto policy in the Broward County Sheriff's Office, and they were allowed to exist because municipal policymakers with authority exhibited deliberate indifference to the problems, thereby effectively ratifying them.

77.     In addition, at all times relevant herein, the Broward County Sheriff's Office did not provide any (or adequate) training or supervision to Broward County Sheriff's Office deputies and detectives regarding lineups, identification procedures, witness statements, or crime investigations.

78.     The importance of and need for training was known to final policymakers of the Broward County Sheriff's Office in and prior to 1988.

79.     Upon information and belief, at all times relevant herein, final policymakers knew of these problems, allowed them to continue, and made decisions not to implement adequate training or supervision.

80.     The constitutional violations Plaintiff alleges were a highly predictable consequence of a failure to equip Broward County Sheriff's Office employees with the specific tools—including policies, training, and supervision—to handle the recurring situations involving lineups and suspect identifications. The Broward County Sheriff's Office made a conscious choice not to properly train, supervise, or discipline its officers or provide adequate policies on these issues.

81.     The deficient policies and practices described herein caused other criminal suspects to be wrongfully convicted, putting policymakers on notice of the problem.

82.     The Broward County Sheriff's Office is liable because the violation of Plaintiff's rights as described in this Complaint were caused by the policies, practices, customs, and/or actions of final policymakers for the Broward County Sheriff's Office.

83.     As a direct and proximate result of the Defendants' actions, Plaintiff's constitutional rights were violated, and he suffered injuries and damages, including loss of liberty, physical injury, emotional pain and suffering, loss of a normal life, and other grievous and continuing injuries as set forth herein.

**COUNT I**
**42 U.S.C. § 1983 – Due Process**
**(Fourteenth Amendment)**

84.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

85.     In the manner described more fully above, Defendants, while acting as investigators, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

86.     Defendants fabricated eyewitness identifications of Plaintiff, implicating him in the crime, by using unduly suggestive identification techniques during photo identifications and a live lineup. Defendants used the resulting false identifications to taint Plaintiff's criminal trial.

87.     Defendants were charged with overseeing and conducting the investigation of Vincent Wright and Anissia Johnson's robbery and knew of this misconduct.

88.     Defendants intentionally misdirected the investigation of the armed robbery on Plaintiff and held him responsible for a crime he did not commit, rather than finding the people who had robbed Wright and Johnson.

89.     Defendants' misconduct directly resulted in the unjust criminal conviction of Plaintiff, thereby denying his constitutional right to a fair trial guaranteed by the Fourteenth Amendment.

90.     Absent this misconduct, Plaintiff could not and would not have been prosecuted.

91.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

92.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

93.     Plaintiff's injuries were caused by the official policies of the Broward County Sheriff's Office, as well as by the actions of final policymaking officials for the Broward County Sheriff's Office.

94.     At all times relevant to the events described in this Complaint and for a period of time prior, Defendant Broward County Sheriff's Office promulgated deficient rules, regulations, policies, and procedures governing witness interviews, photo lineups, and live lineups.

95.     These rules, regulations, policies, and procedures were implemented by employees and agents of Defendant Broward County Sheriff's Office, including the individual Defendants, who were responsible for conducting investigations of crimes in and around Fort Lauderdale, Florida.

96.     In addition, at all times relevant to the events described in this Complaint and for a period of time prior thereto, Defendant Broward County Sheriff's Office had notice of a widespread practice by its officers and agents under which people such as Plaintiff were criminally investigated based on faulty evidence and improper identification tactics, deprived of their liberty without probable cause, and routinely implicated in crimes.

97.     These widespread practices were allowed to flourish because the leaders, supervisors, and policymakers of Defendant Broward County Sheriff's Office directly encouraged and were thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and discipline their officers, agents, and employees who pursued wrongful prosecutions and convictions.

98.     The above-described widespread practices, which were so well settled as to constitute the *de facto* policy of the Broward County Sheriff's Office, were allowed to exist because policymakers with authority exhibited deliberate indifference to the problem, thereby effectively ratifying it.

99.     The misconduct described in this Count was undertaken pursuant to the policy and practices of Defendant Broward County Sheriff's Office in that the constitutional violations

committed against Plaintiff were committed with the knowledge or approval of people with final policymaking authority or were actually committed by people with such final policymaking authority.

100. The above policies, practices, and customs were the moving force behind the constitutional violations in this case and directly and proximately caused Plaintiff's grievous and permanent injuries and damages.

101. Plaintiff's injuries were caused by officers, agents, and employees of the Broward County Sheriff's Office, including but not limited to individually named Defendants, who acted pursuant to the policies, practices, and customs set forth above.

**COUNT II**
**42 U.S.C. § 1983 – Federal Malicious Prosecution**
**(Fourth and Fourteenth Amendment)**

102. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

103. In the manner described above, Defendants, acting as investigators, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetrate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

104. In doing so, Defendants caused Plaintiff to be unreasonably seized without probable cause and deprived of his liberty, in violation of Plaintiff's rights secured by the Fourth and Fourteenth Amendments.

105. The false judicial proceedings against Plaintiff were instituted and continued maliciously, resulting in injury.

106. Defendants deprived Plaintiff of fair state criminal proceedings, including the chance to defend himself during those proceedings, resulting in a deprivation of liberty.

107.    In addition, Defendants subjected Plaintiff to arbitrary governmental action that shocks the conscience in that Plaintiff was deliberately and intentionally framed for a crime of which he was completely innocent.

108.    Defendants fabricated evidence by manufacturing a false witness identification using suggestive identification procedures.

109.    Defendants knew the identification procedures would yield inaccurate results but had already fixated on Plaintiff as their suspect without evidence that he was involved in the crime.

110.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

111.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

112.    On March 13, 2023, the judicial proceedings against Plaintiff were terminated in his favor, in a manner indicative of his innocence, when the State of Florida entered a *nolle prosequi*.

113.    Defendants' misconduct described in this Count was undertaken pursuant to policies, practices, and customs of Defendant Broward County Sheriff's Office, and by Defendants who were final policymakers for the Broward County Sheriff's Office, in a manner more fully described above.

## COUNT III
### 42 U.S.C. § 1983 – Seizure Without Probable Cause
### (Fourth and Fourteenth Amendments)

114.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

115.     As set forth in the paragraphs above, Defendants Smith, Freshwaters, and Campbell, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, accused Holmes of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Holmes without any probable cause for doing so and in spite of the fact that they knew Holmes was innocent, in violation of his rights secured by the Fourth and Fourteenth Amendments.

116.     In doing so, the Defendants caused Holmes to be deprived of his liberty without probable cause, detained without probable cause, and subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

117.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and/or in total disregard of the truth of Holmes's innocence.

118.     As a result of Defendants' misconduct described in this Count, Holmes suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, loss of a normal life, and other grievous and continuing injuries and damages as set forth in the above paragraphs.

119.     The misconduct described in this Count was undertaken pursuant to the policies and practices of the Broward County Sheriff's Office in the manner more fully described in Count IV below.

**COUNT IV**
**42  U.S.C. § 1983 — Policy & Custom Claims Against the**
**Broward County Sheriff's Office**

120.    Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

121.    As described above, Defendant Broward County Sheriff's Office is liable for the violation of Holmes's constitutional rights by virtue of its official policies.

122.    Holmes's injuries were caused by the express or official policies, absence of necessary express policies, and widespread practices and customs of the Broward County Sheriff's Office, as well as by the actions of policymaking officials for the Broward County Sheriff's Office.

123.    At all times relevant to the events described in this Complaint and for a period prior and after, the Broward County Sheriff's Office failed to promulgate any or adequate rules, regulations, policies, or procedures on the conduct of lineups and identification procedures, as well as of meaningful discipline of officers accused of such unlawful conduct.

124.    In addition, or in the alternative, the Broward County Sheriff's Office failed to train, supervise, or discipline officers of their respective police departments on the above matters. The Broward County Sheriff's Office chose not to implement any or adequate policies and training in these areas even though the need for such policies and training was obvious, and the failure to do so would lead to violations of constitutional rights. The decision not to implement any or adequate policies or training in these areas also contributed to the widespread practices described in this Complaint.

125.    The failure to promulgate proper or adequate rules, regulations, policies, procedures, and training was committed by final policymakers or those delegated final policymaking authority.

16

126.   At all relevant times herein, final policymakers for the Broward County Sheriff's Office knew of these problems and allowed them to continue, and made decisions not to implement adequate policies, training, supervision, or discipline.

127.   The constitutional violations complained of by Holmes were a highly predictable consequence of a failure to equip employees with the specific tools—including policies, training, and supervision—to handle the recurring situations of how to conduct proper identification procedures, including lineups.

128.   The policies, practices, and customs set forth above were maintained and implemented with deliberate indifference. They were the moving force behind the constitutional violations described above and directly and proximately caused Holmes to suffer the grievous and permanent injuries and damages set forth above.

## COUNT V
### Conspiracy to Deprive Holmes of His Constitutional Rights

129.   Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

130.   After the robbery of Vincent Wright and Anissia Johnson, Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for the robbery, a crime he did not commit, and thereby deprive him of his constitutional rights, all as described above in the various paragraphs of this Complaint.

131.   In doing so, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability by depriving Plaintiff of these rights.

132.   In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

133.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

134.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as fully described above.

### COUNT VI
### State Law Claim — Malicious Prosecution

135.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

136.     In the manner described above, Defendants, acting as investigators, individually, jointly, or in conspiracy with one another, as well as within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in damage to Plaintiff, and all such proceedings were terminated in Plaintiff's favor.

137.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

138.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth.

139.     On March 13, 2023, the judicial proceedings against Plaintiff were terminated in his favor, in a manner indicative of his innocence, when the State of Florida entered a *nolle prosequi*.

## COUNT VII
### State Law Claim — Negligence

140.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

141.     Defendants owed Plaintiff a duty to refrain from framing him for a crime he had not committed and to conduct a legal and thorough investigation of the robbery of Vincent Wright and Anissia Johnson that results in the accurate identification, arrest, and prosecution of criminal suspects.

142.     In the manner described more fully above, the actions, omissions, and conduct of Defendants breached this duty.

143.     The misconduct described in this Count was objectively unreasonable and was undertaken in total disregard of the truth and Plaintiff's clear innocence.

144.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT VIII
### State Law Claim — Intentional Infliction of Emotional Distress

145.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

146.     The actions, omissions, and conduct of Defendants as set forth above were extreme and outrageous.

147.     These actions were rooted in an abuse of power and authority.

148.     These actions were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause severe emotional distress to Plaintiff, as is more fully alleged above.

149.     As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer physical injury, emotional distress, and other grievous and continuing injuries and damages as set forth.

## COUNT IX
### State Law Claim — Negligent Infliction of Emotional Distress

150.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

151.     Defendants owed Plaintiff a duty to refrain from framing him for a crime he had not committed and to conduct a legal and thorough investigation of the robbery of Vincent Wright and Anissia Johnson that resulted in the accurate identification, arrest, and prosecution of criminal suspects.

152.     In the manner described more fully above, the actions, omissions, and conduct of Defendants breached this duty.

153.     The misconduct described in this Count was objectively unreasonable. It was reasonably foreseeable that Defendants' actions would cause any reasonable person, including Plaintiff, emotional distress.

154.     As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer physical injury, emotional distress, and other grievous and continuing injuries as set forth above.

## COUNT X
### State Law Claim — Civil Conspiracy

155.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

156.     As described more fully above, Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose

by unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability by depriving Plaintiff of these rights.

157.    In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

158.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

159.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT XI
### State Law Claim — *Respondeat Superior*

160.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

161.    While committing the misconduct alleged in the preceding paragraphs, individual Defendants were employees, members, and agents of the Broward County Sheriff's Office, acting at all relevant times within the scope of their employment.

162.    Defendant Broward County Sheriff's Office is liable as principal for all torts committed by its agents.

## COUNT XII
### State Law Claim — Indemnification, Fla. Stat. Tit. XLV, § 768.28

163.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

164.    Florida law provides that public entities are to pay tort judgments for which employees are liable within the scope of their employment activities.

165.     Defendants were employees, members, and agents of the Broward County Sheriff's Office, acting at all relevant times within the scope of their employment in committing the misconduct described herein.

*     *     *

WHEREFORE, Plaintiff SIDNEY LAMAR HOLMES respectfully requests that this Court enter a judgment in his favor and against the Broward County Sheriff's Office, Kenneth Smith, Robert Campbell, and Robert Freshwaters; awarding compensatory damages, attorneys' fees, and costs against each Defendant; awarding punitive damages against each of the individual Defendants; and any other relief that this Court deems just and appropriate.

## DEMAND FOR A JURY TRIAL

Plaintiff SIDNEY LAMAR HOLMES hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: March 12, 2025                                        **Sidney Lamar Holmes**

                                                            BY:  _/s/ Dominque Russo_____
                                                            *One of Plaintiff's Attorneys*

Renee Spence *admissions pending*              Dominique Russo *local counsel*
Jon Loevy *pro hac vice forthcoming*           Russo Law & Advocacy
Maria Makar *pro hac vice forthcoming*         9142 Dupont Pl
Loevy & Loevy                                  Wellington, FL 33414-6476
311 N. Aberdeen Street                         305-209-5301
Chicago, IL 60607                              dominique@drussolaw.com
(312) 243-5900