IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| SIDNEY LAMAR HOLMES,<br><br>    Plaintiff,<br><br>v.<br><br>BROWARD COUNTY SHERIFF'S OFFICE, KENNETH SMITH, ROBERT CAMPBELL, and the ESTATE OF ROBERT FRESHWATERS,<br><br>    Defendants. | Case No. 0:25-cv-60477-WPD |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

Sidney Holmes, by and through his counsel, Loevy & Loevy, responds to Defendants' Motion to Dismiss as follows:

**INTRODUCTION**

Plaintiff Sidney Holmes was wrongfully convicted of attempted robbery at a Fort Lauderdale convenience store. He spent over half his life—more than 30 years—in prison for a crime he did not commit. Holmes' wrongful conviction was caused by Defendants' misconduct: Defendants knew that Holmes was innocent, but they used unduly suggestive witness identification and suspect lineup procedures to manipulate a witness into identifying Holmes as one of the perpetrators. Once the investigation was reviewed, Holmes' conviction was vacated.

In Holmes' Complaint, he explains how Officers Kenneth Smith, Robert Campbell, and Robert Freshwaters framed Holmes for a crime he did not commit. The Complaint details how the officers manipulated the witness's identification and alleges that the officers' misconduct was promoted by policies and practices of the Broward County Sheriff's Department.

The allegations in the Complaint satisfy the notice pleading standards of the Federal Rules

1

of Civil Procedure. They also satisfy the pleading requirements for each of the individual claims brought by Holmes. Defendants' arguments to the contrary are meritless, and their Motion to Dismiss should be denied.

## FACTUAL BACKGROUND

On June 18, 1988, 20-year-old Vincent Wright and 17-year-old Anissia Johnson were robbed at gunpoint by three men outside a OneStop convenience store in Fort Lauderdale. ECF 1 (Complaint) at ¶ 21. Earlier that same day, Vincent's brother Milton had been the victim of an attempted robbery by four men nearby. *Id.* at ¶ 29. Defendants Campbell and Freshwaters were the lead detectives assigned to investigate the June 18 robbery of Wright and Johnson, and Defendant Smith was also involved in the investigation. *Id.* at ¶ 16, 34.

At the time of the robbery, Sidney Holmes, then 22, was celebrating Father's Day at his parents' home, an alibi that was later testified to by four witnesses. *Id.* at ¶¶ 28, 49–50, Completely innocent, he knew nothing about the robberies, but the Complaint alleges that Broward County detectives seized on Holmes as one of the perpetrators, and began fabricating a case against him. *Id.* at ¶¶ 86–89. After Wright failed to identify Holmes from a photo lineup, Detective Campbell went to Holmes' home and took a new picture of him. *Id.* at ¶¶ 38–39. Defendants then used this photo in a second lineup. *Id.* at ¶ 42. Holmes was the only person who was in both photo arrays, and this time Wright identified him as one of his robbers. *Id.* Holmes was convicted of the armed robbery of Wright and Johnson on April 26, 1989, and received a 400-year sentence. *Id.* at ¶¶ 51, 55.

Holmes maintained his innocence throughout his trial, conviction, sentencing, and incarceration. *Id.* at ¶ 56. In November 2020, he applied to Florida's Conviction Review Unit, and the CRU determined that Holmes asserted a plausible claim of innocence and accepted his case for review. *Id.* at ¶ 58. In 2021 and 2022, the CRU worked with the Innocence Project of Florida to

investigate the circumstances surrounding Mr. Holmes' conviction. *Id.* at ¶ 59. The CRU interviewed Wright and Johnson and consulted with eyewitness identification experts. *Id.* at ¶¶ 60–63. The experts concluded there were multiple factors which adversely affected the accuracy of Wright's identification of Holmes. *Id.* at ¶ 64. This included the use of suggestive photographs of Holmes, the time lapse between the crime and the identification, potentially biased instructions, and the fact that Holmes was the only person featured in multiple arrays. *Id*. The CRU then provided members of the State's Independent Review Panel with information from the original investigation and their review. *Id.* ¶ 65.

On February 16, 2023, the IRP unanimously determined there was a reasonable doubt as to Holmes' culpability for the June 19, 1988, robbery. *Id.* at ¶ 66. In March 2023, Holmes' conviction was vacated, charges were dropped, and he was released from prison—more than 33 years after he had gone in. *Id.* ¶¶ 67–69.

On March 21, 2025, Holmes' sued the Broward County Sheriff's Office, Kenneth Smith, Robert Campbell, and the Estate of Robert Freshwaters for twelve counts of violations of Mr. Holmes' constitutional and state law rights, including violation of due process, malicious prosecution, intentional infliction of emotional distress, and conspiracy. ECF 1. Defendants Broward County Sheriff's Office (the "County"), Robert Campbell, and the Estate of Robert Freshwaters moved to dismiss the complaint on May 30, 2025. ECF 23. They argued: (1) Mr. Holmes' complaint was a shotgun pleading meriting dismissal without prejudice, (2) he failed to state a *Monell* claim against the County, (3) his conspiracy claims fail under the intra-corporate conspiracy doctrine, and (4) Counts XI and XII (state law respondeat superior and indemnification) fail to state a claim against the County. *Id.*

3

## LEGAL STANDARD

Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At this stage of the case, courts evaluate the sufficiency of the pleading based on a liberal notice pleading standard where the pleading need only give defendants fair notice of the claims, not "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the complaint provides "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" then the complaint survives. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, all that is required is that the plaintiff "set out facts sufficient to 'raise a right to relief above the speculative level.'" *Lane v. Philbin*, 835 F.3d 1302, 1305 (11th Cir. 2016) (quoting *Twombly*, 550 U.S. at 555). Plaintiff's allegations "must be plausible" but "plausibility is not probability." *Id.* On a motion to dismiss, courts construe the complaint's allegations in the Plaintiff's favor. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Courts "accept the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (citation omitted).

## ARGUMENT

Holmes' Complaint provided Defendants with clear, detailed allegations that put them on notice of his claims against them. That is all that is required at this stage. Defendants' arguments to the contrary lack merit, and their Motion to Dismiss should be denied.

I.  **Plaintiff's Second Amended Complaint is not a shotgun pleading.**

Defendants argue that Plaintiff's Complaint is a shotgun complaint because each count incorporates the prior paragraphs. ECF 23 at 3. However, that argument contradicts the pleading standards set out by the Federal Rules of Civil Procedure. Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," aside from requirements for

4

jurisdiction and prayer for relief. It does not prohibit incorporating the same set of facts in support of each count. To the contrary, Rule 10(c) permits a statement in a pleading to be "adopted by reference elsewhere in the same pleading." And because all of Holmes' claims arise from the same series of events, they all incorporate the same set of factual allegations describing that series of events.

The Eleventh Circuit has rejected the specific argument that Defendants advance in their motion to dismiss. In *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015), which Defendants cited in their Motion (ECF 23 at 3), plaintiff Christopher Weiland alleged that two police officers entered his bedroom, shot him without warning, and fabricated evidence against him. *Id.* at 1317. He sued the officers and the sheriff's department. *Id.* at 1318. Weiland alleged numerous claims: due process, excessive force, cruel and unusual punishment, conspiracy, intentional infliction of emotional distress, and malicious prosecution. *Id.* at 1318. These were distinct claims with different legal elements. However, at the beginning of each of these counts, Weiland re-alleged the same subset of numbered paragraphs ("Plaintiff realleges and reavers the allegations of paragraphs 1-49"). *See Weiland v. Palm Beach Cnty. Sheriff's Office*, No. 9:12-cv-81416, Dkt. 12 (S.D. Fla.) (Third Amended Complaint).

*Weiland* held that re-alleging the same set of 49 factual allegations at the beginning of every count did *not* constitute shotgun pleading because the defendants had adequate notice of which facts supported the claims brought against them. *Id.* at 1324. The task of figuring out which of the 49 paragraphs supported each claim was "greatly simplified by the organization of the 49 paragraphs of factual allegations into three subsections." *Id.* at 1325. This organization clarified which paragraphs supported each claim. *Id.*

Here too, Holmes organized his complaint into defined subsections. Different subsections detail: the facts of the crime he was accused of committing, ECF 1 ¶¶ 21–28; the investigation that

5

led to his wrongful conviction, *id.* ¶¶ 30–41; the specific misconduct committed by Defendants in that investigation, *id.* ¶¶ 35–43, 71–82; his trial and exoneration, *id.* ¶¶ 44–69; and the damages that he suffered due to this horrific experience, *id.* ¶83. In all these subsections, Holmes explicitly identifies the specific misconduct that he alleges each officer committed. Like in *Weiland*, this organization makes clear which allegations support each of Holmes' claims.

Defendants also argue that Plaintiff's Complaint is a shotgun pleading because the counts "commingl[ed] multiple claims" and are alleged against multiple Defendants. ECF 23 at 4–5. Again citing *Weiland*, Defendants argue that they are left without adequate notice. *Id.* at 5. Contrary to Defendants' arguments, Plaintiff's Complaint is clearly delineated as follows:

- Count I: § 1983 Due Process (Fourteenth Amendment) Claim against All Defendants

- Count II: § 1983 Malicious Prosecution (Fourth and Fourteenth Amendment) Claim against All Defendants

- Count III: § 1983 Seizure without Probable Cause (Fourth and Fourteenth Amendment) Claim against Defendants Smith, Freshwaters, and Campbell

- Count IV: § 1983 Policy and Customs Claims against the Broward County Sheriff's Office

- Count V: Conspiracy to Deprive Holmes of his Constitutional Rights against all Defendants

- Count VI: State Law Malicious Prosecution against All Defendants

- Count VII: State Law Negligence against All Defendants

- Count VIII: State Law Intentional Infliction of Emotional Distress against All Defendants

- Count IX: State Law Negligent Infliction of Emotional Distress against All Defendants

- Count X: State Law Civil Conspiracy against all Defendants
- Count XI: State Law *Respondeat Superior* – Broward County Sheriff's Office
- Count XII: State Law Indemnification – Broward County Sheriff's Office[1]

The complaint in *Weiland* similarly split counts by causes of action, but included multiple Defendants in one count. 792 F.3d at 1327. The *Weiland* court instructed, "A dismissal under Rules 8(a)(2) and 10(b) is appropriate where it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Id.* at 1325. (citation and quotation marks omitted). As was the case in *Weiland*, "No such virtual impossibility exists in this case." *Id.*

The Complaint in this case is unlike the complaints in the other cases cited by Defendants. In those cases, courts found confusing complaints that were "replete with conclusory, vague, and immaterial allegations," *Barmapov v. Amuial*, 986 F.3d 1321, 1326 (11th Cir. 2021), and "omi[tted] several material facts." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 (11th Cir. 2002). Defendants have not argued, nor could they, that those confusing characteristics are present in Holmes' complaint.

This Court should not indulge Defendants' invitation to depart from the notice pleading standard. The Federal Rules of Civil Procedure require complaints to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). Plaintiffs should separate the facts supporting each claim into "numbered paragraphs," which may incorporate earlier paragraphs by reference. Rule 10(b). Holmes has complied with these rules and the Defendants are on notice of the claims against them, and the facts that support those claims. That is enough at this stage.

II.   **Holmes adequately pleaded his *Monell* claims.**

---

[1] Defendants did not challenge the sufficiency for Plaintiff's pleadings for Counts I–III and VI–IX, so those arguments are waived. *Patterson v. City of Melbourne*, 669 F. Supp. 3d 1204, 1221 n.17 (M.D. Fla. 2023) (quoting *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009)).

To succeed on a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), Holmes must "prove that the [County] had a policy, custom, or practice that caused the deprivation" of his constitutional rights. *Hoefling v. Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). "Although prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier." *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 403 (4th Cir. 2014). "A plaintiff fails to state a claim only when he offers 'labels and conclusions' or formulaically recites the elements of his § 1983 cause of action." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

According to Defendants, Holmes' *Monell* claim fails because he has not identified a "pervasive practice" that was the moving force behind Holmes' injuries.[2] ECF 23 at 6. Defendants' argument is impossible to square with the language in Holmes' Complaint. As described more fully above, Holmes expressly alleged that the Broward County Sheriff's Office either had inadequate policies or failed to promulgate adequate policies regarding a number of matters, including on the use of false evidence, unduly suggestive identification procedures, improper lineups, and discipline of officers accused of unlawful conduct. Dkt. 67 at ¶¶ 70–76, 123. Likewise, Holmes specifically identifies a widespread practice of using unconstitutional measures to falsely implicate criminal suspects, including engaging in unduly suggestive identification and lineup procedures. *Id.* at ¶71. Holmes also alleges that these policies, practices, customs, and/or actions of final policymakers for the Broward County Sheriff's Office caused his injuries. *Id.* ¶ 82–83.

These practices led directly to implicating innocent people in crimes they had no connection to and where there was little evidence they were involved. These allegations not only expressly identify policies and practices of the County, but also explain how those policies directly

---

[2] Holmes also brings his *Monell* claim under failure-to-train and final policymaker theories. ECF 1 at ¶¶ 77–80, 124–28 (failure to train); *id.* at ¶¶ 78–79, 125–26 (final policymaker). Defendants did not challenge these theories in their motion to dismiss, so those arguments are waived. *Patterson*, 669 F. Supp. 3d at 1221 n.17 (quoting *Egidi*, 571 F.3d    at 1163).

8

led to Defendant Officers' misconduct and the violation of Holmes' constitutional rights. Most importantly, Holmes' allegations put the County on notice of his claims against it, satisfying his pleading obligations at this stage. As such, Defendants' argument has no merit.

Defendants' cited authority is inapposite, at least as far as the arguments they advance. Specifically, Defendants cite *Mercado v. City of Orlando* for the proposition that Holmes' *Monell* claim cannot advance because he has not alleged other incidents involving substantially similar facts. ECF 23 at 6. Setting aside the other, valid *Monell* theories Holmes' alleged, *Mercardo* is a summary judgement opinion. 407 F.3d 1152 (11th Cir. 2005). The standard at the pleading stage is much different because no written or oral discovery has commenced. Holmes has not yet had the opportunity to develop the facts the County suggests it should already have. All he must do at this stage is allege that the constitutional violations in this case are caused by the County's policies and practices, or lack thereof. The County's argument is premature at this stage, and the Court should deny its motion.

**III.    Plaintiff sufficiently pleaded his two conspiracy claims.**

Plaintiff pleaded two conspiracy claims: Count V alleged under 42 U.S.C. § 1983 that Defendants conspired to deprive Plaintiff of his civil rights, and Count X alleged under state law that the Defendants participated in a civil conspiracy.

The intracorporate conspiracy doctrine does not bar Plaintiff's conspiracy claims. Because Plaintiff alleges that the Defendants violated federal law by conspiring to violate his constitutional rights, *see* 18 U.S.C. §§ 241, 242, his claims fall within an exception to the intracorporate conspiracy doctrine and can proceed on that basis.

A claim for conspiracy to violate constitutional rights succeeds by showing that the defendants' conspiracy "resulted in the actual denial of some underlying constitutional right." *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010). Generally, such a claim cannot be

9

brought against employees of the same organization because of the "intracorporate conspiracy doctrine," which holds that employees of the same organization cannot conspire together. *See McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc).

However, there are exceptions to the intracorporate conspiracy doctrine that allow conspiracy claims to be brought against employees of the same organization. One exception—which applies here—permits conspiracy claims to proceed when a plaintiff alleges that employees of the same organization conspired to commit a crime. *Id.* at 1035.

Here, Plaintiff alleges that the Defendants conspired to violate his constitutional rights. Specifically, Plaintiff alleges that Defendants conspired "to frame" Plaintiff for attempted murder in violation of Plaintiff's due process rights protected by the Fourth and Fourteenth Amendments. ECF 1 at 17. This misconduct violates federal criminal law. 18 U.S.C. § 241 makes it unlawful for "two or more persons [to] conspire to injure, oppress … or intimidate any person … in the free exercise or enjoyment of any right or privilege secured to him by the Constitution." Violations of § 241 are punishable by up to ten years in prison. Similarly, 18 U.S.C. § 242 makes it unlawful for anyone acting under color of law to "willfully subject [] any person … to the deprivation of any rights, privileges or immunities secured or protected by the Constitution." Violations of § 242 are punishable by up to one year in prison.

Courts in this circuit have agreed with Plaintiff's argument and held that the intracorporate conspiracy doctrine does not bar conspiracy claims that also constitute crimes under 18 U.S.C. §§ 241 and 242. *Battiste v. Jenne*, 2006 WL 3665420, at *2 (S.D. Fla. Nov. 15, 2006); *Metcalf v. Campbell*, 2007 WL 9736177, at *2–3 (N.D. Fla. Oct. 30, 2007); *see also Wilson v. Estate of Burge*, 667 F. Supp. 3d 785, 876 (N.D. Ill. 2023) (intracorporate conspiracy doctrine did not apply where plaintiff alleged the deprivation of numerous civil rights). As the Eleventh Circuit recognized in *McAndrew*, a case cited by Defendants, there is "no basis" for distinguishing between different

10

federal criminal laws in applying the criminal conspiracy exception. A violation of *any* federal law falls within the exception, and because the Defendants' alleged misconduct here violates 18 U.S.C. §§ 241 and 242, the intracorporate conspiracy doctrine does not apply.

Defendants cite numerous cases that discuss the intracorporate conspiracy doctrine, but none of those cases grappled with the exception that applies here. For example, Defendants cite *Dickerson v. Alachua County Commission*, 200 F.3d 761 (11th Cir. 2000). But that case provides little insight because the Eleventh Circuit explicitly said it was not deciding whether the "exception in criminal conspiracy cases should also apply in a civil conspiracy action" given that the Plaintiff did not make that argument. *Id.* at 770. In contrast, here, Plaintiff is arguing that the intracorporate conspiracy doctrine does not apply because the Defendants' actions violated federal law. *McAndrew* provides the better guide to answering that question because it analyzed the applicability of the criminal conspiracy exception. And as the Eleventh Circuit held in *McAndrew*, "alleging an intracorporate conspiracy" to violate a citizen's constitutional rights "necessarily alleges a criminal conspiracy," so "the intracorporate conspiracy doctrine cannot apply." 206 F.3d at 1041.

**IV.   Holmes' *respondeat superior* claim (Count XI) provides Defendants with notice of the theory's applicability.**

Defendants argue that Holmes' *respondeat superior* claim should be dismissed only because it is not an independent cause of action. While Florida courts recognize *respondeat superior* as a legal theory rather than an independent cause of action, dismissals on this basis are "purely technical." *McKenzie v. United States Tennis Ass'n Inc.*, 2023 WL 3058036, at *8 n. 20 (M.D. Fla. Apr. 24, 2023). Even when courts dismiss *respondeat superior* claims on this basis, parties are not precluded from arguing that the theory applies to the case and courts are not precluded from determining that the theory has been plausibly pled. *Id.*; *see also Chunhong Jia v. Boardwalk Fresh Burgers & Fries, Inc.*, 2020 WL 5628734, at *2–3 (M.D. Fla. Sept. 21, 2020).

11

In that sense, *respondeat superior*, when pled as its own count, works to put a party on notice of the applicability of this doctrine to any applicable claims. *Id.*[3]

### V. Holmes' indemnification claim (Count XII) accurately reflects the indemnification allowed Under Section 768.28, Florida Stat.

Section 768.28(9)(a), Fla. Stat., explicitly allows for indemnification of public employees acting within the scope of their employment:

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property
>
> . . . .
>
> The state or its subdivisions are not liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

In other words, if the public employee acted within the scope of employment and without bad faith, malicious purpose, or willful/wanton conduct, then the state or its subdivision is liable, not the individual.

Defendants' motion incorrectly claims that if an employee is liable in tort, it means they must have acted with bad faith or malice, and therefore indemnification is unavailable. The case cited by Defendants, *Moore v. Williams*, No. 3:23-CV-1388-MMH-LLL, 2024 WL 3965859 (M.D.

---

[3] Defendants also make a cursory (and consequently, waived) argument that Holmes did not allege that he provided notice of his claim before filing suit. However, Defendant cites cases where the plaintiff did not allege notice in their complaint, nor comply with notice requirements in fact. Holmes provided notice of his claims to Defendants pursuant to Florida Statute § 768.28 on April 19, 2024. As of the date of Holmes' Complaint, Defendants had not responded, constituting an effective denial. ECF 1 (March 12, 2025, Complaint).

Fla. Aug. 28, 2024), discusses whether a sheriff is required to indemnify officers for willful and wanton conduct. The case does not contradict the general framework provided in § 768.28, which allows for indemnification of government employees under specific conditions.

## CONCLUSION

For the above reasons, the Court should deny Defendants' Motion to Dismiss in its entirety.

Respectfully submitted,
/s/ Dominique Russo
*One of Plaintiff's Attorneys*

Dominique Russo
Russo Law & Advocacy
9142 Dupont Pl
Wellington, FL 33414-6476
Telephone:(305)209-5301
dominique@drussolaw.com

Jon Loevy*
Maria Makar*
LOEVY & LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
Telephone: (312) 243-5900
jon@loevy.com
makar@loevy.com
**Attorneys for Plaintiff**
**Admitted Pro Hac Vice*